## WESTERN HATCHERIES et al. v. BYRD.
### No. 14000.

Court of Civil Appeals of Texas. Dallas.
Feb. 18, 1949.

Order on Remittitur Feb. 25, 1949.

Geo. Sergeant and Sarah Daniels, both of Dallas, for appellants.

Fulgham & Borden, of Weatherford, for appellee.

BOND, Chief Justice.

On January 3, 1947 appellants and appellee entered into a written contract whereby appellants agreed to purchase and appellee agreed to sell all the eggs produced from a flock of 499 turkeys for the entire 1947 season, beginning January 1 and ending June 1, at a price of 29 cents per egg. The fertility of the eggs was guaranteed to be 85% or better, with a 3% tolerance. On April 7, 1947, due to a falling market price of eggs, the contracting parties entered into an additional, or further supplemental agreement reading as follows: "Agree as of today, April 6, 1947,

by the buyer and seller, we, Western Hatcheries, will pay 27 cents for eggs shipped April 5th and 22 cents for eggs for balance of season. It is further agreed that all fertility guarantees be dropped."

Subsequent to the date of above supplemental agreement appellee delivered to appellants all the eggs produced from his flock of turkeys until May 28, 1947. For those shipped prior to April 5 at the reduced price of 27 cents, and for those shipped thereafter to May 28 at 22 cents, the price aggregated in excess of $2,274. Appellants paid for all the eggs received except those invoiced on May 21, 1947 at $220; on May 24, $177.44; and on May 28, $132.00, aggregating $529.44.

On May 25, 1947, because of the decided drop in the market price of turkey eggs and poults, and the infertility of eggs at that time of the season, below the allowable fertility of 85% provided in the contract of January 3, appellants advised appellee by telegram: "Positively cannot use any more eggs," resulting, on May 28, in appellee having to sell his entire flock of turkeys. Subsequently appellee instituted this suit against appellants for the contract price of the three invoices of eggs delivered prior to the aforesaid telegram, in the sum of $529.44; also for damages claimed to have resulted from the breach of the aforesaid contracts, in appellants' refusing to accept eggs for the remaining four days to the end of the contract period (May 28 to May 31 inclusive), in the sum of $308—basing the latter claim for damages on an anticipated production of 350 eggs per day, amounting to 1,400 eggs, at 22 cents per egg.

The appellant, Western Hatcheries, a partnership composed of Joe Fechtel and Leonard Helkelmeyer, in answer to appellee's suit, aside from a general denial, specially alleged a contemporaneous verbal agreement with reference to the last supplemental written contract between the parties in reference to the guarantee of fertility of the eggs sold being waived or "stopped"; in that, the infertility of the eggs far exceeded the usual ration custom incident to and experienced in all the transactions between the parties to the contract; also specially alleged that a vast number of the eggs delivered were infertile, did not hatch; hence to the extent of infertile eggs received, and the cost of trying to process such eggs, the full consideration of the contract had failed.

The case was tried to the court without a jury and judgment rendered in favor of appellee in the sum of $749.44 with 6% interest from April 21, 1947 and all costs of suit.

 It will be seen that appellee's suit being based upon a written contract, definite in terms and conditions, in absence of allegations of fraud, accident or mistake, and supported by facts of such nature as to void the legal effect of such written agreements, the covenants therein are not subject to modification, alteration, change or variance by appellants' alleged parol contemporaneous agreements. "Power to modify a pre-existing contract is coextensive with the power to initiate it, and is an incident of contractual capacity. * * * It requires the same mutuality to vary or modify a contract as it does to create it in the first instance, since the modification is only a species of contract; and a meeting of the minds of the parties is equally essential." 10 Tex.Jur., p. 356, sec. 203. A party desiring to show that the written contract sued on, which is complete and perfect on its face, did not embrace the entire agreement of the parties, must allege that the part not embraced was omitted through fraud, accident or mistake. In the case at bar appellants alleged no such ground as to admit evidence of modification, or variance of the contract sued on. However, evidence, pro and con, was conflicting as to the special answer of the appellants, and the court having decided the issue by competent evidence in favor of appellee, to the effect that the parties made no such oral agreement as contended by appellants, contradictory to the terms and conditions of the written contract, such decision is binding on this court. The conclusions of the trial court in judgment having determined that appellee's claim of $529.44 is within the express terms of the written contracts, to that extent the judgment should be affirmed. But, the second count of ap-

pellee's claim upon which the trial court entered an additional judgment for $220 is without legal support in pleadings or evidence. Such judgment manifestly is based upon speculative testimony, too uncertain and indefinite to form the basis for any amount. It will be seen that appellee alleged that his flock of turkeys was producing an average of 350 eggs per day and that by reason of defendant's refusal to use any more eggs he lost the four days anticipated production amounting to 1,400 eggs, and at 22 cents per egg he suffered damage in the sum of $308. Appellee further pleaded that "because of the refusal of defendant to accept any more eggs he was forced and compelled to immediately place his entire flock of turkeys on the market for sale and did sell them on May 28, 1947. Surely, if the appellee sold his entire flock of turkeys as alleged, he then had no means to produce any eggs after receiving the refusal message from the appellant that he would not accept any more eggs; then, too, if he had not sold the turkeys the number of eggs that would have been laid is again a fanciful guess, a speculative conclusion, like unto Aesop's Fable, "The Milkmaid and her Pail": "Patty the Milkmaid was going to market carrying her milk in a Pail on her head. As she went along she began calculating what she would do with the money she would get for the milk. 'I'll buy some fowls from Farmer Brown,' said she, 'and they will lay eggs each morning, which I will sell to the parson's wife. With the money that I get from the sale of these eggs I'll buy myself a new dimity frock and a chip hat; and when I go to market, won't all the young men come up and speak to me! Polly Shaw will be that jealous; but I don't care. I shall just look at her and toss my head like this.' As she spoke she tossed her head back, the Pail fell off it, and all the milk was spilt. So she had to go home and tell her mother what had occurred. 'Ah, my child,' said the mother, 'Do not count your chickens before they are hatched.'" The analogy here is, when appellee sold his turkeys that might have produced the eggs, he spilt the milk, thus lost his profit. The moral for us being, "Do not count your profit before the eggs are laid."

To sustain appellee's judgment for the $220, the conclusion is speculative that had he kept the turkeys, they would have lived; and if they had lived they would have laid the eggs; and if they had laid the eggs he would have delivered them to appellant and received the profit. Under such fantastic speculation, the judgment of the court below for the additional sum of $220 is outside legal pleadings and evidence, requiring a reversal and remand of this cause, unless appellee, within twenty days, shall file a remittitur of $220, in which event the judgment for $529.44 with 6% interest from April 21, 1947, and all costs of suit in the court below and one-half of the costs on appeal shall be affirmed; otherwise, reversed and remanded for new trial.

### Order on Remittitur.

The appellee having made and presented a remittance in the sum of $220 in accordance with our original opinion, the judgment of the court below is, therefore, reformed, and as reformed, the judgment of the trial court in favor of appellee is affirmed in the sum of $529.44 with 6% interest thereon from April 21, 1947 and all cost in the court below. For reasons of the reduction in the judgment, one-half of the cost in this appeal is taxed against the respective plaintiff and defendant. It is so ordered.